## W. H. SCOTT v. SUN FIRE OFFICE.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 3, 1890—Decided March 17, 1890.

(a) A condition of a policy of fire insurance was as follows: "If the premium for the insurance, or annual renewal thereof, has not been actually paid, the society shall not be liable on this policy to the insured." On the back of the policy was indorsed: "Payment of the premium to a broker is not valid until received by the society: "

1. In such case, where the premium was paid by the insured, on the receipt of the policy, to the insurance broker effecting the insurance, was charged to the broker upon the books of the company's agent, and in the regular course of business between the broker and the agent was paid over to the latter, the policy was binding upon the company.

2. A notice to the broker, after such payment and issuance of the policy thereon, that the company refused the risk and that the policy must be canceled, such notice not being communicated to the insured and the premium returned to him, was insufficient as a cancellation, and the policy remained in force against the company.

Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Charge of Court below.

No. 111 July Term 1889, Sup. Ct.; court below, No. 119 August Term 1888, C. P.

On August 3, 1888, William H. Scott brought assumpsit against the Sun Fire Office, of London, to recover upon a policy of insurance against loss by fire.   Issue.

At the trial on May 13, 1889, the plaintiff, under objection and exception sealed to the defendant, showed in substance that when the policy was issued to him he paid the premium then payable to Mr. Griesemer, the insurance broker through whom the insurance was obtained, and that this premium, in the regular course of business between Mr. Griesemer and Mr. Ermentrout, the agent of the defendant company, was charged upon the books of the latter against the former, and was paid before any loss upon the policy.[1] [2]

The policy put in evidence contained the following provisions:

" 7. If any broker or other person than the insured has procured this policy, or any renewal thereof, or any indorsement thereon, he shall be deemed to be the agent of the insured and not of this society in any transaction relating to the insurance ; . . . .

" 8. This insurance may be terminated at any time at the request of the insured, . . . . The insurance may also be terminated at any time at the option of the society, on giving notice to that effect and refunding a ratable proportion of the premium for the unexpired term of the policy."

Other facts and matters in dispute sufficiently appear in the charge to the jury, HAGENMAN, P. J.:

This action is brought by William H. Scott to recover a loss which he sustained by fire on January 23, 1888, upon property alleged to have been insured by the defendant company on the 5th day of January of that same year.

The evidence discloses that on or about January 5, 1888, Mr. Scott had some policies of insurance that were about to expire, and he applied to Mr. Griesemer to effect some additional insurance for him.   On January 5, 1888, the policy in suit was obtained by him from the agent of the defendant company through Mr. Griesemer.   The premium was $18,

which was paid by Mr. Scott to Mr. Griesemer. Mr. Griesemer was not the agent of this company. Mr. Philip M. Ermentrout was the agent of the defendant company, and in the course of the established business between Mr. Griesemer and Mr. Ermentrout, Mr. Griesemer came to Mr. Ermentrout for insurance in companies of which he himself was not the agent; and when the insurance was effected in this way, through Mr. Ermentrout, instead of paying the money at once, they had a regular course of business by which Mr. Ermentrout charged Mr. Griesemer in his account, and at the end of the month, or a little after, settlements of these accounts would be made by payments in cash.

On the 5th of January, when Mr. Griesemer received the policy from Mr. Ermentrout, Mr. Ermentrout charged him with $18, the premium of the policy; and it is claimed upon the part of the plaintiff that that was a compliance with the condition of the policy. The defendant alleges that the payment should have been in cash money to the company. Whether they contend that the payment should have been made directly to the company, or whether they admit that it would have been sufficient to have been paid to Mr. Ermentrout, I do not now recollect; [but the premium was not paid to Mr. Ermentrout at that time, nor was it paid to the company.

The condition mentioned in the policy is: "If the premium for the insurance, or annual renewal thereof, has not been actually paid, the society shall not be liable in this policy to the insured." The defendant contends that the insurance money was not actually paid at that time, but was simply charged against Mr. Griesemer. On the back of the policy is an indorsement as follows: "Payment of the premium to a broker is not valid until received by the society."

We say to you that, in the established course of business between Mr. Griesemer and Mr. Ermentrout, the charge which was made against Mr. Griesemer by Mr. Ermentrout was in effect the same as if the cash had been paid by Mr. Griesemer to Mr. Ermentrout; and that the payment to Mr. Ermentrout, who was the agent of the company, was a payment to the company itself.] [3]

There is no dispute in the testimony in regard to the evi-

Charge of Court below.

dence on this point. Mr. Griesemer states to you that he had received the money from Mr. Scott, and that in the dealings which he and Mr. Ermentrout had together for insurances which he effected through Mr. Ermentrout, he was charged, and that he made his settlement, and that he did actually pay to Mr. Ermentrout the $18 premium, not at that time, but at a subsequent time, somewhere about the 10th or 11th of the following February.

I will at this stage answer the first point of the plaintiff:

1. If the jury believe the plaintiff paid Griesemer the premium for the policy in suit on the 5th day of January, and that Griesemer thereafter received the said policy from Ermentrout, and was charged for it in an account which he afterwards settled in the established course of dealings between them, and that Ermentrout in due course remitted the premium to the defendant, then the policy was not invalidated for any neglect to pay the premium, and was a valid and subsisting contract between the parties from its date, unless subsequently canceled in legal form.

Answer: This point is affirmed.

The plaintiff alleges that he has submitted testimony to the jury, in addition to what I have stated, that in the regular course of business established between them, this charge was made against Mr. Griesemer, and that Mr. Ermentrout actually paid the money over to the defendant company. That evidence is before you, and you will take the testimony of Mr. Ermentrout in regard to it, and you will determine from the testimony whether that was so or not.

The policy, then, being a policy in full force, has the plaintiff a right to recover against the defendant for the loss which he sustained by the fire on January 23, 1888?

It is claimed by the defendant that somewhere about January 16 or 17, 1888, the defendant gave notice to Mr. Griesemer that the company refused to take that risk, and that that policy must be canceled. No notice of the cancellation of that policy was given to any other person than to Mr. Griesemer; and it is claimed upon the part of the defendant that notice to him was sufficient. Mr. Griesemer never gave any notice of this cancellation of the policy to Mr. Scott. Mr. Scott had the policy in his possession up to the time of the fire without any notice of cancellation by the defendant company.

Charge of Court below.

[It is contended by the plaintiff that this notice of Mr. Ermentrout to Mr. Griesemer was not sufficient; that the notice should have been given to Mr. Scott and not to Mr. Griesemer. The parties lived in the same town. Mr. Griesemer was the agent for Mr. Scott to effect the insurance, and after that insurance was effected and the policy delivered over to Mr. Scott, we instruct you that Mr. Griesemer ceased to be the agent for Mr. Scott in regard to this policy, and that the notice to him (Griesemer) was not sufficient notice that the policy was refused and canceled by the defendant company.] [7]

It is claimed by the defendant that at the time when notice was given that the policy would be canceled, Mr. Ermentrout communicated with Mr. Griesemer that he effected other insurance in the place of this, and it is claimed that he did effect insurance in two other companies for the same amount and delivered the policies to Mr. Griesemer. Mr. Griesemer held those policies at the time of the fire, and did not deliver them to Mr. Scott. Mr. Scott knew nothing of this arrangement or action of Mr. Ermentrout in regard to the two additional policies. He had the defendant company's policy in his possession, and that policy he relied upon for his loss at the time.

I will now answer second point submitted by the plaintiff:

2. The plaintiff was not bound to accept other policies for the policy in suit, unless he chose to do so; and if the jury believe that Ermentrout attempted such substitution without the plaintiff's consent, the validity of the policy in suit was not affected thereby.

Answer: This point is affirmed. We have substantially said so to you in the general charge.

I shall now answer the defendant's points. The defendant has asked us to say:

2. The uncontradicted evidence in this case being that the broker, Mr. Griesemer, who negotiated the policy in question with P. M. Ermentrout, agent of the defendant at Reading, Pennsylvania, did not pay in cash the premium to the defendant company or its agent, Mr. Ermentrout, before the loss of the plaintiff, no contract of insurance was then entered into and consummated between plaintiff and defendant, and the verdict must be for the defendant.

Answer: This point is answered in the negative.[4]

3. The books of Mr. Ermentrout, the defendant's agent at Reading, showing no credit to the Sun Company at the date of the fire, January 23, 1888, and no cash having been paid him by Mr. Griesemer or Mr. Scott, for and on account of the premium on the policy in suit, no waiver of the condition of the policy requiring the actual cash payment to the defendant before any liability is incurred by virtue of the same is shown in this case, and the verdict must be for the defendant.

Answer: This point is answered in the negative.[5]

6. That the company had, by the terms of the policy, the power and right to terminate the insurance at any time upon giving notice; and as such notice was given to Mr. Griesemer, the insurance was thereby terminated, if it ever had taken effect; and that it was not necessary to the validity of such notice and termination of the risk to refund the unearned portion of the premium, as no premium had been received by the company or its agent, Mr. Ermentrout.

Answer: This point is answered in the negative.[6]

The jury returned a verdict in favor of the plaintiff for $1,272. Judgment having been entered, the defendant took this appeal, assigning for error:

1, 2. The admission of the plaintiff's offers.[1] [2]

3. The portion of the charge in [ ] [3]

4–6. The answers to the defendant's points.[4 to 6]

7. The portion of the charge embraced in [ ] [7]

*Mr. C. H. Ruhl* (with him *Mr. Daniel Ermentrout*), for the appellant.

As to the payment of the premium, counsel cited: Pottsville Ins. Co. v. Improvement Co., 100 Pa. 143; Greene v. Insurance Co., 91 Pa. 389; Marland v. Insurance Co., 71 Pa. 393; Elkins v. Insurance Co., 113 Pa. 387; Leb. Mut. Ins. Co. v. Hoover, 113 Pa. 591; Lancashire Ins. Co. v. Nill, 114 Pa. 248. On the question of cancellation: Pottsville Ins. Co. v. Improvement Co., supra; Grace v. Insurance Co., 109 U. S. 278.

*Mr. D. H. Wingerd* (with him *Mr. Isaac Heister*), for the appellee.

As to the payment of the premium, counsel cited: Riley v.

Insurance Co., 110 Pa. 144; Lebanon Mut. Ins. Co. v. Hoover, 113 Pa. 591; Pittsb. Boat-Yard Co. v. Assurance Co., 118 Pa. 415; Insurance Co. v. Block, 109 Pa. 540; Leb. Mut. Fire Ins. Co. v. Erb, 112 Pa. 159. On the question of cancellation: Grace v. Insurance Co., 109 U. S. 278; Zenos v. Wickham, L. R. 2 H. L. 296; Lancashire Ins. Co. v. Nill, 114 Pa. 248.

PER CURIAM:

We find no error in this record. The plaintiff paid the premium to his broker at the time the insurance was effected. The broker was not the agent of the defendant company, and the payment to him was not, therefore, a payment to the company. But the premium was charged against the broker by Mr. Ermentrout, who was the recognized agent of the company, and was paid to him in the due and regular course of business between them. The payment to Mr. Ermentrout was a payment to the company. The agent had periodical settlements with his principal, and the premium was regularly accounted for in this manner.

Had the company succeeded in canceling the policy before the fire, it would have had a good defence. This was not done. It evidently intended to do so, but the act was not consummated. The intention was not communicated to the plaintiff, and the company never returned the premium, nor offered to do so. Under these circumstances, there was no cancellation. None of the assignments requires special notice.

Judgment affirmed.