## M. Arnfeld & Son *v.* The Guardian Assurance Co. of London, England, Appellants.

*Fire insurance—Cancellation of policy—Substitution of one company for another.*

An insurance policy gave to the insurance company the right to cancel the policy on five days' notice.   The company exercised this privilege through a broker, who, acting for the plaintiffs on the second day after the notice, reinsured them for the same amount in another company.   The policy of the first company was not surrendered by the plaintiffs, nor was there any formal cancellation of it, or return of any part of the premium. On the day following the reinsurance the property was destroyed by fire. The evidence showed that in effecting the reinsurance it was the intention of all parties that the second company should be substituted for the first, and that plaintiffs did not intend to increase their line of insurance.   The second company paid its proportion of the loss.   *Held,* that plaintiffs were not entitled to recover from the first company.

Argued Oct. 29, 1895.   Appeal, No. 95, Oct. T., 1895, by defendants, from judgment of C. P. No. 2, Allegheny County, Oct. T., 1895, No. 653, on verdict for plaintiffs.   Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

Assumpsit on a policy of fire insurance.  Before EWING, P. J. The facts appear by the opinion of the Supreme Court.

Verdict and judgment for plaintiffs for $2,679.25.  Defendants appealed.

*Error assigned* among others, was answer to defendants' second point, quoted in the opinion of the Supreme Court.

*W. K. Jennings,* for appellants.

*Joseph Stadtfield,* for appellees.—The notice to Zugschmidt was no notice to the assured: May on Ins. sec. 67 ; Scott v. Sun Fire Office, 133 Pa. 322 ; Lancashire Ins. Co. v. Hill, 114 Pa. 248 ; Xenos v. Wickham, L. R. 2 H. L. 296.

The unearned premium had neither been returned nor tendered: 1 Wood on Ins. sec. 113 ; Ætna Ins. Co. v. Maguire, 51 Ill. 343 ; McGraw v. Germania Ins. Co., 54 Mich. 145 ; Lattan v. Ins. Co., 45 N. J. 453 ; Griffey v. Ins. Co., 100 N. Y. 417 ; Hollingsworth v. Ins. Co., 45 Ga. 294 ; First Nat. Fire Ins. Co. v. Isett & Stokes, 11 W. N. C. 558.

The policy was not canceled by the voluntary act of the insured: 1 Wood on Ins. 292; Stebbins v. Ins. Co., 60 N. H. 65 ; Massasoit Steam Mills Co. v. Western Assurance Co., 125 Mass. 110 ; Thomas v. Ins. Co., 119 Mass. 122 ; Lindley v. Ins. Co., 65 Me. 368 ; Stacey v. Ins. Co., 2 W. & S. 506.

OPINION BY MR. JUSTICE DEAN, January 6, 1896 :

On the 29th of March, 1893, the defendants, through one Charles Zugschmidt, an insurance broker, issued to plaintiffs a policy of insurance against fire in the sum of $2,500 on a stock of clothing in their store in Pittsburg; the term of the insurance was one year.  The policy further contained this stipulation,—that it should be canceled "at any time at the request of the insured, or by the company, by giving five days notice of such cancellation.  If this policy shall be cancelled as herein provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rates except that when this policy is cancelled by this company, by giving notice, it shall retain only the pro rata premium."

On the 8th of May, 1893, the company gave verbal notice to Zugschmidt, the broker, that the policy would be canceled within five days; he replied he "would take notice and replace it as soon as possible." Zugschmidt, then, within two days, took out a policy in name of plaintiffs for a like sum, $2,500, in the Queen Insurance Company, to replace the one directed to be canceled. On the afternoon of the 10th of May, when defendants' agents inquired of Zugschmidt whether he had replaced the risk, his son said he had placed it in the Queen Company; the agent of the defendants then said: "It is distinctly understood the Guardian is relieved." Zugschmidt replied, "The Guardian is relieved." Nothing further was done; the policy issued by defendant company was not redelivered, nor was there any formal cancellation of it, or return of any part of the premium. On the 11th of May, the day following this conversation, the property of plaintiffs was destroyed by fire. Including both policies, and those in other companies, plaintiffs' aggregate insurance was $28,000. The plaintiffs and adjusters of the different companies settled the loss on a basis of 85 per cent of the total aggregate insurance, or $23,800. The Queen Insurance Company recognized its liability on its policy, and paid its proportion of the loss. The plaintiffs, alleging there was no effectual cancellation of defendants' policy at date of loss, brought suit upon it, and under the evidence and instructions to the jury by the court below got a verdict and judgment for the full amount insured, $2,500. Defendants now appeal, assigning five errors.

As the right to recover depends wholly on the questions raised by the defendants' second written prayer for instruction, which was refused by the court below, and which constitutes the second assignment of error, it is not necessary to notice the other assignments. Defendants' second point was as follows: "If the jury believe from the evidence that the plaintiffs, by their agent, Charles Zugschmidt, on the 10th of May, 1893, took out a policy in the Queen Insurance Company for $2,500, upon the same property as that covered by the policy in suit, and that their purpose in so doing was not to increase their line of insurance, but to substitute the policy in the Queen in the place of the policy in suit, because the defendants had given notice on the 8th of May, 1893, to cancel the policy in suit

within five days, in accordance with its terms, and the Queen Company recognized their responsibility, and paid the plaintiffs the amount covered by their policy the moment the risk was covered in the Queen, the policy in suit was thereby canceled and defendants released, and the verdict should be for defendants."

The court below, being of opinion, as the plaintiffs had the right to take out additional insurance ; and as the five days in which they were requested to have the first policy canceled had not expired at the date of fire ; and as the policy was still in possession of the plaintiffs, without any direct return to them, or offer to return unearned premium, the policy was still in force, declined to give the instruction prayed for. The only question then is, Should this point have been affirmed ?

It may be conceded there was no formal technical cancellation of the policy issued by the defendants; it was in possession of plaintiffs ; defendants had not returned or offered to return to them the premium ; but was there a substitution of the liability of a third party for that of the defendants, by the consent of the plaintiffs, defendants, and the third party ? Defendants' contract was one of indemnity in a fixed amount against loss by fire on certain goods ; a third party, the Queen Insurance Company, took its place and indemnified plaintiffs against precisely the same loss, in the same amount, on same goods, then stood by its contract, and paid the loss. This was a complete and effectual substitution of another insurer in place of defendants. And this was by the consent of all parties interested. For it is not important to discuss the exact authority of an insurance broker, as Zugschmidt was, and determine to what extent he was the agent of the insured and the insurers— that is, where the line should be drawn. It is undisputed he acted throughout for the plaintiffs, and for both companies, communicated with both, and all consented to and ratified his acts. Nor is it controlling that there was no formal cancellation or surrender of the first policy. The plaintiffs got the policy in the Queen Company, and what is more important got the money upon it. The premium they had paid to the defendants, in so far as they were entitled to a return of it, is owing by the defendants, through the broker, to the Queen Company, to whom the broker acting for plaintiffs, transferred defendants'

liability. Plaintiffs ought to have surrendered for cancellation defendants' policy. What ought to have been done, equity will consider as having been done. The case is not unlike that of a creditor who has taken surety for a debt; the surety declines to be longer responsible; the debtor procures a new surety acceptable to the creditor, who takes the place of the first on a new note; the creditor retains possession of the old note; the new surety pays the debt; the creditor sues the first surety on the old note, alleging it had never been formally delivered up or canceled. In such case the learned judge of the court below would very promptly have said that if a creditor be once paid, his mere possession of the old note would not warrant the exaction of a second payment of the same debt. It seems to us there is no distinction between the supposed case and the one before us, except that the first is a contract for suretyship and the second of indemnity. The injustice worked by permitting a second recovery in the one is the same as in the other. No party ought to be allowed to recover twice for the same debt, no matter how many instruments evidencing the amount of his debt he may hold, nor how many distinct obligors there may be on them. Most creditors are content if their debt be paid once; all ought to be.

We think there was error in refusing to affirm defendants' second point, therefore the judgment is reversed. As the facts, as we have stated them, were undisputed, a v. f. d. n. is not awarded.